*709 OPINION OF THE COURT
Robert F. Doran, J.
By order dated February 13, 1979, the Commissioner of Health was, pursuant to subdivision 2 of section 2810 of the Public Health Law, appointed by this court as receiver of the Kings Harbor Care Center (hereinafter Kings Care), a 360-bed, residential, skilled nursing facility and Kings Harbor Manor Facility (hereinafter Kings Manor), a 360-bed, health-related facility. At 11:45 a.m. on February 14, 1979, the receiver presented the order to the administrator of the facility and took control at that time.
By order to show cause dated February 28, 1979, a motion by the intervenor was heard on the same date.
The intervenor, Instlcorp, Inc. (Instlcorp), is a corporation, all of whose stock is owned by savings banks located in New York State. Instlcorp holds a mortgage on the real estate where the Kings Care and Kings Manor facilities are located. The owners of the property are two Illinois limited partnerships, although title is actually held by Nur-Hom Realty Corp., as nominee for the limited partnerships. The owners had entered into a lease of the facilities with the petitioners, who were the actual operators of Kings Care and Kings Manor. Because the owners were in default on their payments on the mortgage, Instlcorp demanded and obtained, on February 21, 1979, an assignment of rents due the owners from the operators.
Basically, Instlcorp is seeking an order directing the receiver to honor the lease between the owners and the operators. As of February 16, 1979 the owners were in arrears in their mortgage payments to Instlcorp in a sum exceeding $650,000 in principal and interest payments and $39,000 in real estate tax escrow deposits. Instlcorp argues that unless it is allowed to intervene, its interest in the property may be adversely affected because the receivership proceeding involves the disposition or distribution of property that should or could belong to Instlcorp. The receiver opposes the intervention. The court holds that under CPLR 1012 (subd [a], par 3) intervention is proper, and the question of whether rent must be paid to Instlcorp is properly before the court.
The receiver also vigorously opposes any attempt by Instlcorp to collect rent due it.
Instlcorp points to section 2810 (subd 2, par c) of the Public *710 Health Law, which provides, in part, that the receiver "shall honor all existing leases, mortgages and chattel mortgages that had previously been undertaken as obligations of the owners or operators of the facility.” The receiver points to section 2810 (subd 2, par b) of the Public Health Law, which points to the necessity of negotiating a rental for the facility.
The court concludes that Instlcorp is entitled to receive the rent due under the existing lease. The receiver clearly is bound under section 2810 (subd 2, par c) of the Public Health Law to honor all existing leases. The language relied upon by the receiver is not applicable to this situation. That language involves the question of what might be due to an operator who also owns a facility. Said language does not come into operation in the situation at hand where the rent is rent due from the operators of the facilities to the owners of the real property, and the operators and owners are distinct entities.
One final issue is when the payment of rent should commence. Instlcorp seeks in its motion to have the receiver pay for the full month of February, 1979. The full rent for one month includes an aggregate net monthly basic rental of $117,000 plus monthly real estate tax escrow deposits of $39,000. The receiver states that he should only be made to pay from the day he took over. In short, he claims that he should only pay a pro rata amount for February. The court concludes that the receiver is correct and only has to pay rent from February 14, 1979 forward.
Any rent owing to Instlcorp for the period prior to that time is a matter between the operators and Instlcorp and a matter for the final accounting by the receiver.